**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** ) | Cause No. CR-11-10-BLG-RFC | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v.  ) | **ORDER** | |
| ) | | |
| **LLOYD JOHN ROMERO,** ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

Defendant is charged by Indictment for the offense of Felon in Possession of a Firearm, in violation 18 U.S.C. § 922(g)(1). Defendant has filed a motion to suppress all evidence seized as a result of the search and seizure pursuant to the warrant executed on or about September 24, 2010. The government opposes this motion. A hearing was held on March 24, 2011.

## BACKGROUND FACTS

Henry Gonzales is a convicted felon who was on felony state supervision at the time of the events at issue here. Gonzales was required to abide by conditions of probation which governed where he could live. *See Gov't Ex. 1,* "Conditions of Probation and Parole." Among those conditions were the following:

-1-

**RESIDENCE:** My residence must be approved by my Probation/Parole Officer. I will not change my place of residence without first obtaining permission from my Probation/Parole Officer. I will make my home open and available for an Officer to visit or search upon reasonable suspicion. I will not own dangerous/vicious animals such as guard dogs, use perimeter security doors or any other device that would hinder an Officer nor refuse to open the door to my residence when requested.

**SEARCH OF PERSON OR PROPERTY:** Upon reasonable suspicion, as ascertained by the Probation & Parole Officer, my person, vehicle, and/or residence may be searched at any time, day or night, without a warrant by a Probation/Parole Officer, ISP Officer or a Law Enforcement Officer (at the direction of the Probation/Parole/ISP Officer). I may also be searched at my place of employment. Any illegal property or contraband will be seized and may be destroyed.

*Govt's Ex. 1,* ¶¶ 1 & 7.

Gonzales signed his conditions of probation on February 2, 2010. His supervising state probation officer Brad Pinnick knew Gonzales lived at 2485 2nd Street, Worden, Montana (Worden residence herein) for about two months before the search at issue. On July 26, 2010, Gonzales did a monthly report at probation and parole. Gonzales advised Pinnick that he had moved in with his cousin (Tana Romero) in Worden. On August 3, 2010, Pinnick confirmed and approved the new physical address. *See Govt's Ex. 2,* "Chronos."

On August 12, 2010, Gonzales was implicated in new criminal activity. Billings Police Department contacted Pinnick and advised that Gonzales was in

-2-

custody for theft of merchandise from a local business. Pinnick and another probation officer went to the business and met with the police officer and Gonzales. From there, they went with Gonzales to his residence in Worden and knocked on the door. Tana Romero answered and told the probation officers that Gonzales did not live there and refused them entry into the home. Tana eventually let them in and admitted that Gonzales, his girlfriend, and her children were living at the residence. Officers searched the residence and found evidence of the theft.

On August 17 and August 27, Gonzales told Pinnick that he was looking for a new place to live. Pinnick was not made aware of any changes of residence nor did he approve any move. On Thursday, September 23, 2010, Gonzales went to the probation office to report in and told Pinnick and Mark Kotrc that he had "possibly" found a new place to live in the Heights, and said he anticipated finding out for sure the following week. Pinnick noted that Gonzales also said he had a lead on a new job and thought he would know about that in a week as well.

On September 24, 2010, agents with Eastern Montana HIDTA went to the probation and parole office in Billings and arrested Gonzales on a federal warrant after he was indicted. Pinnick requested the agents accompany him to Gonzales' residence in Worden to assist him in a search.

-3-

Gonzales advised Detective Shillinger that he moved out of the residence "yesterday," but Pinnick said as of the day before, Gonzales told Pinnick he was still at the Worden residence and this was the residence listed and approved by probation and parole.

HIDTA assisted the probation officers in clearing the Worden residence for safety reasons. Officers knocked on the door and it was opened by Mike Voeller. Pinnick told Voeller that they were there to conduct a home visit and search. Voeller told officers Gonzales no longer lived there. Voeller initially refused officers' commands to come outside but eventually complied.

Tana Romero came to the door next and said that they had not seen Gonzales in a week. Tana Romero advised that two other people were in the Worden residence, including the Defendant. Schillinger was familiar with Tana Romero and Voeller from previous investigations and was aware of their significant drug histories. Tana Romero and Voeller were brought outside the residence and secured.

Agents and probation officers entered the residence to remove Lloyd Romero and the other person. While clearing the living room and kitchen area, Schillinger observed drug paraphernalia in plain view.

-4-

When officers came to a hallway area, they observed two closed door, one of which was locked.  Pinnick opened the unlocked door and observed Defendant lying on the bed with Crystal Lundberg.  A "loker" for ingesting methamphetamine was also plainly visible on the night stand beside the door. Officers instructed Lundberg and Defendant to get up.  Romero got out of bed and was clothed in boxer shorts.  He picked up a pair of black pants and carried them with him toward the hallway.  Schillinger told Defendant to turn around and Defendant dropped the pants on the floor.  Schillinger and others heard the pants make a "thud" sound when they hit the wooden floor.  Defendant was handcuffed and told he was only being detained.

Once agents cleared the residence for safety purposes, they spoke with Tana Romero and Voeller, who told agents that Gonzales had disappeared about a week prior.  Probation officers maintained this was still Gonzales' residence and they had authority to search.  Schillinger elected to apply for a search warrant before conducting a further search of the residence.

Schillinger applied for and obtained two search warrants from Thirteenth Judicial District Court Judge Baugh, one for the residence and one for Tana Romero's vehicle parked outside the residence.  Schillinger returned to the Worden residence and began to search it under the authority of the search warrant.

During the search, he looked in the pants dropped by Defendant and discovered a semi-automatic pistol in the right front pocket.

## ANALYSIS

The Fourth Amendment allows officers to search the residence of a probationer without a warrant upon reasonable suspicion of a probation violation. *See United States v. Knights*, 534 U.S. 112 (2001) (upholding the warrantless search of a probationer's residence that was supported by a probation condition authorizing the search and reasonable suspicion). "Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Knights*, 534 U.S. at 119, quoting *Griffin v. Wisconsin*, 483 U.S. 868 (1987) (internal quotation marks omitted).

The Ninth Circuit has held that "before conducting a warrantless search [of a residence] pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched." *Motley v. Parks*, 432 F.3d 1072, 1080 (2005). The probable cause standard for a parole search necessarily applies to probation searches as well because both parolees and probationers "are on the 'continuum' of state-imposed punishments," *Samson v. California*, 547 U.S. 843, 850 (2006). Parolees "have

-6-

fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* Therefore, the logical conclusion is that because the Fourth Amendment gives parolees the benefit of probable cause in this context, the same protection would extend to probationers.

In *United States v. Howard*, 447 F.3d 1257 (9th Cir. 2006), the Ninth Circuit elaborated on the probable cause requirement and stated that it "applied a relatively stringent standard in determining what constitutes probable cause that a residence belongs to a person on supervised release." *Id.* at 1262. "It is insufficient to show that a parolee may have spent the night there occasionally. Instead, the facts known to the officers at the time of a search must have been sufficient to support a belief, in 'a man of reasonable caution,' that the address was the probationer's residence at the time." *Id.*, citing *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal quotation marks omitted).

All reliable information indicates that the probation officers had probable cause to believe Gonzales lived at the Worden residence. This is the only residence he had permission to live at and he had not sought permission to live at another location. Although Gonzales claimed to have moved out of the Worden residence the day before, he had only advised his probation officer that he had possibly found another place to live.

-7-

Tana Romero advised officers that Defendant had moved out a week prior. However, she had previously lied to probation about where Gonzales lived only a few weeks before. Further, Tana Romero's story did not match up with Gonzales' rendition of the facts. Understandably, officers could not give Tana Romero's statement a great deal of credibility. Given the totality of the circumstances, probation officers certainly had probable cause to believe Gonzales was living at the Worden residence.

When Tana Romero and Mike Voeller testified at the suppression hearing, they stated they lived together and were involved in a long-term relationship. Interestingly, Tana Romero gave her physical address as 1320 Yellowstone River Road, and Mike Voeller gave his physical address as 1330 Avenue D, and then later corrected himself and gave a physical address of 365 Prospectors. Neither witness was quite sure where they lived so their testimony regarding where Defendant lived is suspect, at best.

The protective sweep conducted by the officers at the residence was completely necessary and reasonable. Because the house contained drug paraphernalia, Schillinger approached the situation with caution and obtained a search warrant. This is entirely reasonable under the Fourth Amendment.

-8-

Romero attempts to argue that the federal task force officers encouraged the probation officers to conduct a warrantless search in an attempt to boot-strap federal investigators into a search warrant application position. Romero is mistaken in this argument. Federal agents went to the probation and parole office to arrest Gonzales on a federal warrant because he had already been indicted. The probation officers actually requested the federal agents to accompany them to the search of Gonzales' residence. The probation officers had reasonable suspicion to suspect their probationer was involved in ongoing criminal activity and this rightfully triggered their search clause.

Defendant's Motion to Suppress [*doc. #34*] is **DENIED**.

DATED this 30th day of March, 2011.

RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE